UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER A. FRITTS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C11-5800-MJP-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Jennifer A. Fritts appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

I.   FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 37-year-old woman with an eighth-grade education and no GED. Administrative Record ("AR") at 39-41. Her past work experience includes sporadic employment as a waitress, data entry worker, motel maid, pizza

REPORT AND RECOMMENDATION - 1

deliverer, and flower shop assistant. AR at 209. Plaintiff has had many short-term jobs, but it is unclear whether any of those jobs constituted gainful employment. AR at 27.

On September 10, 2008, Plaintiff filed a claim for SSI payments and an application for DIB. AR at 166-74. At the administrative hearing, Plaintiff amended her alleged onset date to later than her date last insured, effectively withdrawing her application for DIB. *See* AR at 38; Dkt. 10 at 2 n.1. Plaintiff asserts that she is disabled due to bipolar disorder, anxiety disorder, agoraphobia, and paranoia. AR at 201.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 92-98, 105-11. Plaintiff requested a hearing which took place on October 14, 2010. AR at 116-17. On November 3, 2010, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on her finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 17-28. After reviewing additional evidence, the Appeals Council denied Plaintiff's administrative appeal of the ALJ's decision, AR at 1-3, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On September 30, 2011, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

REPORT AND RECOMMENDATION - 2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

As the claimant, Ms. Fritts bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

REPORT AND RECOMMENDATION - 3

423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On November 3, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2005.

2. The claimant has not engaged in substantial gainful activity since September 10, 2008, the alleged onset date.

3. The claimant has the following severe impairments: bipolar disorder; anxiety disorder not otherwise specified; personality disorder with cluster "B" traits; marijuana dependence; and polysubstance dependence in sustained full remission.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand, remember and carry out simple, 1-3 step tasks; she can have superficial contact with coworkers

REPORT AND RECOMMENDATION - 5

and supervisors, which means she should not work in coordination with coworkers such as on an assembly line; she can accept instructions from supervisors; she can have superficial and occasional contact with the general public, which means that she can work in the same room or vicinity as the general public and she can refer the public's demands/requests to other employees to respond; and she can greet the public. In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p- and 06-3p.

6. The claimant has no past relevant work.

7. The claimant was born on XXXXX, 1973 and was 21 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8. The claimant has a marginal education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 10, 2008, through the date of this decision.

AR at 19-28.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred by failing to discuss some of the evidence provided by William Cagle, M.D., and his associates at Kitsap Mental Health Services;

2. Whether the ALJ erred in discounting the opinions of Daniel Neims, Psy.D; and

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

3.  Whether the ALJ properly assessed the opinions of examining psychologist William Chalstrom, Ph.D.

Dkt. No. 1 at 1-2.

## VII.  DISCUSSION

A. <u>The ALJ Erred in Failing to Discuss Some of the Opinions of Dr. Cagle and His Colleagues.</u>

Plaintiff contends that the ALJ misinterpreted the treating notes of psychiatrist William Cagle, M.D. Specifically, Plaintiff argues that though the ALJ discussed many of Dr. Cagle's notes in her written decision, the ALJ erred by failing to discuss other anomalous notes. As a result of this approach, argues Plaintiff, Dr. Cagle's opinions were taken out of context and the ALJ ignored certain probative evidence, specifically Plaintiff's fatigue and depression symptoms, Dr. Cagle's diagnosis of "Bipolar I Disorder, Most Recent Episode Mixed, Severe Without Psychotic Features," and Plaintiff's global assessment of function ("GAF") score of 50 as assessed during intake at Dr. Cagle's office.

Specifically, the Plaintiff directs the Court's attention to one section of the ALJ's written decision that, according to Plaintiff, is inconsistent with the whole of Dr. Cagle's opinions:

> Treatment notes support that when the claimant complies with treatment/medications including no drug use, her symptoms improved. In August 2008, the claimant reported that when she was on Effexor, Abilify, and Xanax, she felt better. In November 2008, the claimant reported that she had been focused at a job interview and hoped to start working soon. In October 2008, the claimant reported that her medications were working great. She stated, "I wake up feeling refreshed." She also reported that she wanted to get a laptop so that she could work on getting her GED. In April 2010, the claimant reported that she felt 40 to 50 percent better and she felt like doing a bit more. She was keeping up with cleaning and getting out a bit more. She reported no side effects to Wellbutrin.
>
> In July 2009, the claimant reported that she was great and her moods were leveled.

REPORT AND RECOMMENDATION - 7

> In February 2010, the claimant reported that her mood was stable. She reported that her chief complaint was anxiety but she did not wish to work on that. She reported that she would just deal with it. She reported that she recently quit smoking weed, not because she did not want to anymore, but because she could not afford it.
>
> In August 2010, the claimant reported that her mood was even-keeled and she was not depressed or cycling. She reported that her energy was okay but she was still tired a fair amount of time. She reported that she was getting used to it. She reported some difficulty with sleep and increased her Trazodone dose, which she reported took care of her sleep problem.

AR at 25-26 (internal citations omitted). According to the Commissioner, the ALJ did not need to cite to the specific additional findings highlighted by Plaintiff because those findings were not significant or probative.

    1.    <u>Legal Standards Regarding an ALJ's Analysis of All Evidence.</u>

An ALJ must enter detailed findings permitting review, but need not address all the evidence submitted to her. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). An ALJ must, however, explain why "'significant probative evidence has been rejected." *Id*., 739 F.2d at 1395 (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). Thus, if an ALJ ignores evidence that is not significant and probative, no explanation is required. *Vincent*, 739 F.2d at 1395.

    2.    <u>The Evidence Ignored by the ALJ Was Significant and Probative</u>.

Here, the ALJ chose to focus solely on that evidence that supported findings of improvement, without actually discussing the remaining issues raised by Dr. Cagle in his reports. He and his colleagues treated Plaintiff for an extended period of time, and yet there is little report in the ALJ's opinions on what problems were diagnosed. For example, in January 2009, Dr. Cagle diagnosed Plaintiff with Bipolar 1 Disorder, mixed, severe, posttraumatic stress disorder ("PTSD") and cannabis dependence. AR at 389. He reported that Plaintiff "cannot calm down, has lots of anxiety, walks around angry and mad all the time, and

REPORT AND RECOMMENDATION - 8

continues to experience paranoia that people are either out to get her or have ulterior motives. She has had bipolar symptoms for much of her life." *Id.* Dr. Cagle found that Plaintiff was "*tense and dysphoric. She is mildly pressured. There is no thought disorder.* She has not active suicidal thoughts and no assaultive thoughts. She forwards no psychotic material. The paranoia has a posttraumatic quality." AR at 390 (emphasis added). He further opined that the "patient may well have poorly controlled Bipolar Disorder, although I suspect that even with good control there are going to be significant anxiety issues." AR at 390. The ALJ, in her opinion discussed only the italicized portion of the opinion above. AR at 25. The italicized portion of the report was used to support her statement that "mental status exams are mostly mild to moderate." AR at 25. Taken by itself, this could be true. However, the plain reading of the entire report does not necessarily lead to the conclusion that "mental status exams are mostly mild to moderate."

Similarly, in February 2010, Dr. Cagle did, in fact, report improvement in her bipolar issues as noted by the ALJ. However, this was replaced by anxiety. Contrary to the ALJ's opinion, there was no indication that Plaintiff did not want to deal with it and would just work on it. Instead, Dr. Cagle wrote:

> Her anxiety and anxiety attacks remain a problem for her despite being off pot for some months. . . . She still feels pretty much the same way, mostly tired all the time. Her anxiety attacks occur a few times a week. She is unaware of triggers. She gets clamminess, as her heart races, then she cannot breathe, and she will sit down and put her head between her legs. These last half an hour at the most. She cannot identify what the hot thought is, although she wonders why she is having the attacks. They may occur less when she is at home. They usually happen when she has to go somewhere or when dealing with her mother. Attacks were worse when she was on drugs and alcohol. She has learned to regulate her breathing and tell herself that she is having these attacks for no reason, and this helps to some degree.

AR at 460.

1   The ALJ did not specifically state what weight she assigned to the opinions of Dr.
2   Cagle, although the ALJ found that Plaintiff had severe impairments as diagnosed by Dr. Cagle
3   (without specifically mentioning the PTSD diagnosis). Presumably, this would mean that the
4   ALJ agreed with Dr. Cagle's opinions. However, given the extensive opinions and comments
5   by Dr. Cagle and his colleagues (including a GAF score of 50) it is not readily evident that
6   these opinions were thoroughly examined. Because the Plaintiff's RFC assessment must be
7   based on a thorough discussion of all objective medical and other evidence, this matter must be
8   reversed and remanded for further proceedings.

B.   The ALJ Erred in Assessing Dr. Neims' Opinions.

Dan Neims, Psy.D, completed a psychological/psychiatric evaluation form and a mental status examination check-box form after evaluating Plaintiff on August 27, 2008. AR at 295-305. The ALJ discounted the check-box forms of Dr. Neims:

> The undersigned gives little weight to the opinion of Dr. Neims. In August 2008, Dr. Neims opined that the claimant was mild to markedly limited in cognitive factors and markedly limited in her ability to relate appropriately to coworkers and supervisors, interact appropriately in public contacts, and in her ability to respond appropriately to and tolerate the pressure and expectation of a normal work setting. Dr. Neims cites no objective basis for his checkboxes. In addition, he noted that the claimant's symptoms improved with treatment.

AR at 26. According to Plaintiff, the ALJ ignored the notes included in Dr. Neims' forms and thus should not have concluded that Dr. Neims' opinions were not supported by objective evidence. *See* Dkt. 12 at 5-6. The Commissioner contends that Dr. Neims' notes indicate that his assessment was based on Plaintiff's self-reports, which do not constitute objective evidence and thus the ALJ did not err. The parties thus disagree as to whether the ALJ's reasons for discounting Dr. Neims' opinions constitute specific and legitimate reasons.

1.     <u>Legal Standards for Assessing Medical Evidence.</u>

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

REPORT AND RECOMMENDATION - 11

2. <u>The ALJ's Reasons for Discounting Dr. Neims' Opinions Are Not Specific and Legitimate.</u>

The ALJ cited two reasons for discrediting Dr. Neims' opinions. First, the ALJ described Dr. Neims' evaluation as a checkbox form, and contended that Dr. Neims did not cite any "objective basis" for his checkbox opinions that Plaintiff "was mild to markedly limited in cognitive factors and markedly limited in her ability to relate appropriately to coworkers and supervisors, interact appropriately in public contacts, and in her ability to respond appropriately to and tolerate the pressure and expectation of a normal work setting." AR at 26.

Dr. Neims supplemented the checkbox form with many handwritten notes. His evaluation can hardly be described as a check the box report. In addition, the Commissioner argues that Dr. Neims' opinions are entitled to "little weight" because they relied, in part, on a Beck Depression Inventory, the results of which are based on Plaintiff's subjective statements. Dkt. 11 at 8-9. However, that ignores the tests he did conduct, namely her speech issues, trouble with serial 7's, recall and her thought form. AR at 302. To say that the Becks Depression Inventory and psychological tests can be disregarded because they involve the subjective statements of the Plaintiff goes too far.

> Psychiatric impairments are not as readily amenable to substantiation by objective laboratory testing as are medical impairments and consequently, the diagnostic techniques employed in the field of psychiatry may be less tangible than those in the field of medicine. . . . Mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness. . . . A strict reading of the statutory requirement that an impairment be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques" is inappropriate in the context of mental illnesses. . . . Thus, when mental illness is the basis of a disability claim, as in this case, clinical and laboratory data may consist of the diagnoses and observations of professional psychiatrists and psychologists. . . .

REPORT AND RECOMMENDATION - 12

*Hartman v. Bowen*, 636 F. Supp. 129, 131-32 (N.D. Cal 1986).  On remand, the ALJ should reevaluate the medical opinion of Dr. Neims.

C. <u>Remand Requires Reassessment of Dr. Chalstrom's Opinions.</u>

In her written decision, the ALJ afforded "significant weight" to the opinion of William J. Chalstrom, Ph.D., who interviewed and examined Plaintiff on July 16, 2010:

> The undersigned gives significant weight to the opinion of Dr. Chalstrom who opined in July 2010 that the claimant was capable of understanding, remembering, and carrying out short and simple instructions.  He stated that the claimant might have difficulty getting along with supervisors, coworkers, and the general public in many work situations.  Dr. Chalstrom's opinion in consistent with the record and is based on exam findings.

AR at 27.  According to Plaintiff, the ALJ's RFC is inconsistent with Dr. Chalstrom's opinion, because the ALJ found that Plaintiff

> can have superficial contact with coworkers and supervisors, which means she should not work in coordination with coworkers such as on an assembly line; she can accept instructions from supervisors; she can have superficial and occasional contact with the general public; which means she can work in the same room or vicinity as the general public and she can refer the public's demands/requests to other employees to respond; and she can greet the public.

AR at 22.

Because this matter is being remanded for further consideration and reassessment of Plaintiff's RFC, the ALJ should specifically address how Dr. Chalstrom's opinion that Plaintiff's difficulty in getting along with supervisors, coworkers, and the general public is consistent with "superficial and occasional contact with the general public, which means she can work in the same room or vicinity as the general public and can refer the public's demands/request to other employees to respond and greet the public."  It is not immediately apparent how this RFC is consistent with Dr. Chalstrom's opinions, particularly in light of Plaintiff's background, where she has worked for 53 different employers and has worked for only ten employers long enough to earn more than $1,000.  AR at 177-86.

REPORT AND RECOMMENDATION - 13

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED FOR FURTHER PROCEEDINGS.  A proposed order accompanies this Report and Recommendation.

DATED this 20th day of June, 2012.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge